# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# EASTERN DIVISION

| | |
|---|---|
| **JUANA VAZQUEZ-HERNANDEZ,** )<br>)<br>Movant, )<br>)    **No.**<br>v. )<br>)<br>**U.S. DRUG ENFORCEMENT** )<br>**ADMINISTRATION; UNITED STATES** )<br>**OF AMERICA; UTTAM DHILLON,** )<br>Acting Administrator, U.S. Drug )<br>Enforcement Administration, sued in his )<br>official capacity; **TASK FORCE OFFICER** )<br>**SCHUE, sued in his individual capacity;** )<br>**TASK FORCE OFFICER HOJSIK, sued** )<br>**in his individual capacity; DEA SPECIAL** )<br>**AGENT CHRIS MOST, sued in his** )<br>**individual capacity; and UNKNOWN** )<br>**AGENTS OF U.S. DRUG** )<br>**ENFORCEMENT ADMINISTRATION,** )<br>**sued in their individual capacities.** )<br>)<br>Respondents. ) | |

## RULE 41(g) MOTION FOR RETURN OF PROPERTY

This motion for return of property challenges the United States Drug Enforcement Administration's ("DEA") ongoing seizure of $63,575.00 in U.S. Currency belonging to Juana Vasquez-Hernandez ("Juana") pursuant to Federal Rule of Criminal Procedure 41(g) ("Rule 41(g)"). Juana hereby moves this Court for an order under Rule 41(g) directing Respondents to return $63,575.00 in U.S. Currency that Respondents (or its agents) seized from Juana on April 2, 2018. In the alternative, Juana requests an order to the same effect, pursuant to this Court's equitable powers or *Bivens v. Six Unknown Named Agents*, 403 U.S. 388 (1971).

Federal courts have held that Rule 41(g) provides property owners with an equitable remedy when the Government fails to initiate civil forfeiture proceedings. *See, e.g., United States*

*v. Sims*, 376 F.3d 705, 708 (7th Cir. 2004) ("The proper office of a Rule 41(g) motion is, before any forfeiture proceedings have been initiated, or before any criminal charges have been filed, to seek the return of property…held an unreasonable length of time without the institution of proceedings that would justify the seizure and retention of the property"); *see generally* Stefan D. Cassella, ASSET FORFEITURE LAW IN THE UNITED STATES § 3-8(c) (2d Ed. 2013) (collecting cases holding that "Rule 41(g) is the appropriate vehicle for seeking the return of property never forfeited"). In such cases, "the request for return of the seized property is essentially a civil equitable proceeding, notwithstanding the fact that the motion was styled under Fed. R. Crim. P. 41(e)" (previously, the subsection addressing motions to return property was Rule 41(e), but in 2002, this subsection was redesignated Rule 41(g) without any substantive change). *United States v. Duncan*, 918 F.2d 647, 654 (6th Cir. 1990) (internal quotations omitted). Furthermore, this procedural mechanism does not turn on whether the Government is purportedly conducting a criminal investigation. *See, e.g., Nexus Holdings Inc. v. Dafcan Fin., Inc.*, 531 F. Supp. 2d 839, 844 (S.D. Ohio 2008) (using the "equitable test applicable to a Rule 41(g) motion" to return money even though the Government was actively conducting a criminal investigation implicating the money).

The DEA seized Juana's money on April 2, 2018 during a traffic stop. The DEA continues to hold Juana's money in violation of the Civil Asset Forfeiture Reform Act of 2000 (CAFRA), a law requiring the Government to send written notice "to interested parties…as soon as practicable, and in no case more than 60 days after the date of the seizure." 18 U.S.C. § 983(a)(1)(A)(i). This deadline remains intact unless, before the 60-day period expires, the Government files a civil judicial forfeiture action and provides notice of that action; obtains a criminal indictment containing a forfeiture allegation; or obtains an extension pursuant to certain statutory

2

requirements. *See id.*, §§ 983(a)(1)(A)(ii), (iii), (B)-(D). If the Government "does not send notice of a seizure of property" as required by law and if "no extension of time is granted," the "Government *shall* return the property to that person." *Id*. at § 983(F). The only exception even arguably relevant to this matter is whether the U.S. Currency is deemed to have been "seized by a State or local law enforcement agency and turned over to a Federal law enforcement agency for the purpose of forfeiture under Federal law," in which case the Government has 90 days to comply with the notice requirements. *Id*. at § 983(a)(1)(A)(iv). Nevertheless, that exception is of no consequence in this case because more than 90 days have passed since the U.S. currency was seized.

In this case, the U.S. Currency was seized by DEA Task Force Officers working on a drug interdiction initiative sponsored by the DEA. *See* Statement of Facts, ¶ 2 (Ex. 1). Before releasing Juana, the DEA Task Force Officers provided Juana with a "U.S. Department of Justice – Drug Enforcement Administration Receipt for Cash or Other Items" expressly acknowledging that the *DEA* seized the U.S. Currency at issue. *See* DEA Receipt (Ex. 2). And, as a matter of law, federal courts have consistently recognized that state and local law enforcement officers working in their capacity as federal task force officers are deemed to be acting in a *federal* capacity. *See infra*. As such, the 90-day deadline does not apply.

Because the Government missed the 60-day (and the 90-day) deadline, CAFRA prohibits any further litigation concerning the U.S. currency—in civil or criminal proceedings—and both CAFRA and the Attorney General regulations require the Government to "promptly" return the property. *See* 18 U.S.C. § 983(a)(3)(B); 28 C.F.R. § 8.13(b). For the reasons set forth below, this Court should order this remedy without delay.

**I.       Relevant Background**

On April 2, 2018, Juana and two other individuals were driving a car on an interstate highway in St. Charles, Missouri. Two DEA Task Force Officers initiated a traffic stop and subsequently conducted a search of the car. They did not find drugs, weapons, or any other sort of contraband. Instead, they found cash.

The DEA seized the cash but released Juana and her two travel companions.

Juana has not been charged with a crime and the Government has not initiated civil forfeiture proceedings against the $63,575.00 in U.S. Currency.

Today, more than 60 days after the DEA unconstitutionally seized Juana's money, the Government has *still* not provided notice to her of the initiation of any civil forfeiture proceedings. And the Government cannot do so now, as the deadline for seeking forfeiture of the U.S. currency expired no later than June 1, 2018 (or July 1, 2018 in the event the 90-day deadline were to apply). As such, this Court should issue an Order requiring the DEA to return the U.S. currency.

**II.      Argument**

A motion under Rule 41(g) is the appropriate means for seeking return of property when the Government fails to commence a forfeiture proceeding in a timely manner. The Rule provides that a "person aggrieved by an unlawful search and seizure of property or by the deprivation of property may move for the property's return." Fed. R. Crim. P. 41(g). This motion "must be filed in the district where the property was seized." *Id*. And "[t]he court must receive evidence on any factual issue necessary to decide the motion." *Id*.

In this case, the limitations period has unquestionably expired and the Government cannot initiate forfeiture proceedings. As a result, Juana has no means of seeking the return of her money other than through Rule 41(g) as she cannot win her money back in proceedings that can never

commence. Thus, this Court should order the Government to return Juana's currency in full. And, because there can be no later proceedings, this Court should not impose any conditions allowing the Government access to the currency.

> A. **The Government Violated the Deadlines Set by CAFRA and is Therefore Obligated to Return the Currency**

With the Civil Asset Forfeiture Reform Act of 2000, Congress enacted reforms intended to prevent abuse of the federal civil forfeiture laws. Among the most important of these reforms was the creation of strict deadlines with which the Government must comply when initiating forfeiture cases. *See* 18 U.S.C. § 983(a).

Under CAFRA, the Government has 60 days—no more, no less—after seizing property to send written notice to *all* interested parties. *Id*. at § 983(a)(1)(A). It is only after that notice is sent that property owners have a limited time within which to file a claim (under penalties of perjury) identifying the specific property being claimed and stating the legal interest in the property. *Id*. at § 983(a)(2). It is the Government that has the burden of initiating civil forfeiture proceedings and a claimant's timeframe to respond is connected to the date of the notice, not to the date of the seizure.

Both Congress and the courts have been crystal clear about the consequences of missing the deadlines of CAFRA: "the Government *shall* promptly release the property pursuant to regulations promulgated by the Attorney General, and *may not* take any further action to effect the civil forfeiture of such property in connection with the underlying offense." 18 U.S.C. § 983(a)(3)(B) (emphasis added). In the Eighth Circuit, "forfeitures are not favored in the law" and "it is also well-established that forfeiture statutes are strictly construed against the government." *United States v. Real Properties located at 7215 Longboat Drive (Lot 24)*, 750 F.3d 968, 974 (8th Cir. 2014) (internal citations omitted); *see also id*., (citing *United States v. $38,000*

5

*in U.S. Currency,* 816 F.2d 1538, 1547 (11th Cir.1987)) ("If anything, the burden on the government to adhere to the procedural rules should be heavier than on claimants. Forfeitures are not favored in the law; strict compliance with the letter of the law by those seeking forfeiture must be required").

Strict compliance means strict compliance. For instance, in *United States v. Funds from Fifth Third Bank Account*, the court ordered the return of seized property where the government commenced a civil forfeiture proceeding just *one day* after the expiration of the 90-day deadline. No. 13-11728, 2013 WL 5924101, at *7 (E.D. Mich. Nov. 4, 2013); *see also United States v. $80,891.25 in U.S. Currency*, No. 4:11-cv-183, 2011 WL 6400420, at *1 (S.D. Ga. Dec. 19, 2011) (same, but filing was two days late). Indeed, in *United States v. Kramer*, the court provided for the return of property even where the Government had obtained a criminal indictment against the property owner—on the ground that the Government failed to take other steps required to satisfy the 90-day forfeiture deadline including obtaining a criminal (as opposed to civil) seizure warrant. No. 1:06-cr-200, 2006 WL 3545026, at *3-4 (E.D.N.Y. Dec. 8, 2006).

In this case, the Government did not comply with CAFRA's 60-day deadline for sending notice to Juana. Instead, the Government threatened Juana and her traveling companions with immigration consequences if she fought for her rights; filed a legally improper motion in Missouri state court incorrectly claiming that this property was seized by state or local law enforcement as opposed to the DEA—a fact the DEA has since admitted in writing (*see* Ex. 2); and made no effort to provide notice as required by the strict mandate of CAFRA to Juana (the driver of the vehicle from which the currency was seized).

6

### B.  This Property Was Seized by the DEA, Not by State or Local Law Enforcement

According to law enforcement itself, this property was seized by DEA Task Force Officers "working on a drug interdiction initiative sponsored by the United States Drug Enforcement Administration (DEA) with canine, Fleck." *See* Ex. 1. To be clear—although entirely irrelevant to the motion at hand—no drugs were found. And before releasing Juana, the DEA Task Force Officers provided Juana with a "U.S. Department of Justice – Drug Enforcement Administration Receipt for Cash or Other Items" expressly acknowledging that it was *the DEA* that had seized the U.S. Currency at issue. *See* Ex. 2.

Finally, it is worth noting that, as a matter of law, DEA task force officers such as the ones who seized the property at issue in this case are deemed to be federal agents—generally and for purposes of civil forfeiture. As the Honorable Beth Phillips recently wrote in a case pending before the United States District Court for the Western District of Missouri, "In numerous contexts courts have consistently treated local law enforcement agents acting as part of a federal task force as federal agents." *See Malin v. Northwest Interagency Team Response Operation*, Case No. 15-06094-CV-SJ-BP (W.D. Mo.) (Doc. 43) (December 18, 2015); *see also Colorado v. Nord*, 377 F. Supp. 2d 945, 949 (D. Colo. 2005) (citing cases from the Third and Tenth Circuits and the Northern District of Illinois); *Farag v. United States*, 587 F. Supp. 2d 436, 471 (E.D.N.Y. 2008); *Harris v. Gadd*, 2008 WL 1763084 at *3 n.7 (E.D. Ark. 2008); *West v. City of Mesa*, 2015 WL 1959467, at *3 (D. Ariz. Apr. 29, 2015) (finding that even an officer who was not officially deputized was a federal agent when working with an FBI joint task force), *reconsideration on other grounds*, 2015 WL 2373472 (D. Ariz. May 18, 2015).

Thus, based on the controlling law and based on the facts relevant to this motion, this currency was seized by the DEA—thereby triggering the 60-day notice requirement.

7

To be clear, though, it has been well over 90 days since the property was seized. Thus, even if this was not deemed a federal seizure and was, instead, deemed a state seizure transferred to federal law enforcement, the extended deadline has also passed.

### C. This Court Should Return the Money Without Conditions

Rule 41(g) provides that "[i]f it grants the motion, the court must return the property to the movant, but may impose reasonable conditions to protect access to the property and its use in later proceedings." However, the Government in this case has failed to comply with CAFRA's strict deadlines and therefore "may not take any further action to effect the civil forfeiture of [Juana's money] in connection with the underlying offense." 18 U.S.C. § 983(a)(3)(B). As such, there are no "reasonable conditions" that this Court could impose.

This is even more true because the Government in this case has already abandoned the actual property—apparently depositing it into a bank. This means that the Government has acknowledged it does not need this Court to preserve "access to the property" or "its use in later proceedings." Fed. R. Crim. P. 41(g). To be clear, it is Juana's position that the Government never had a legitimate entitlement to the money—DEA agents unreasonably seized the money without probable cause—but that is of little moment now that the federal agency is categorically forbidden from pursing the money regardless. By failing to comply with CAFRA's strict deadlines, the Government has forfeited any legal entitlement that it even arguably had in the past.

### III. Conclusion

Based on the foregoing, this Court should grant this motion and order the Government to return Juana's currency to her without delay.

Respectfully submitted,

**Margulis Gelfand, LLC**

*/s/ Justin K. Gelfand*
JUSTIN K. GELFAND, #62265MO
8000 Maryland Ave., Ste. 420
St. Louis, MO 63105
Telephone: 314.390.0234
Facsimile: 314.485.2264
justin@margulisgelfand.com
ATTORNEY FOR MOVANT

## Certificate of Service

I hereby certify that, on this 22nd day of August, 2018, I filed the foregoing Rule 41(g) Motion for Return of Property and the accompanying exhibits electronically with the Clerk of the Court for the Eastern District of Missouri.

I further certify that on this day, I caused a copy of the foregoing motion and accompanying exhibits to be served on the Respondents by certified mail, return receipt requested, at the addresses below:

United States of America
c/o Civil Process Clerk
Office of the U.S. Attorney
111 S. 10th Street, #20.333
St. Louis, MO 63102

Attorney General Jeff Sessions
U.S. Department of Justice
950 Pennsylvania Ave., NW
Washington, D.C. 20530-0001

Task Force Officer Hojsik
St. Charles County Police Department
101 Sheriff Dierker Ct.
O' Fallon, MO 63366

DEA Special Agent Chris Most and Unknown Agents
U.S. Drug Enforcement Administration
St. Louis Division
317 South 16th Street
St. Louis, MO 63103

U.S. Drug Enforcement Administration
8701 Morrissette Drive
Springfield, VA 22152

Acting Administrator Uttam Dhillon
U.S. Drug Enforcement Administration
8701 Morrissette Drive
Springfield, VA 22152

Task Force Officer Schue
St. Charles County Police Department
101 Sheriff Dierker Ct.
O'Fallon, MO 63366

*/s/ Justin K. Gelfand.*